Bichakdson, Oh. J.,
delivered the opinion of the court:
The claimant, a second lieutenant in the Army, was an acting assistant commissary, when, traveling as a passenger in a stage, in the line of his duty, on the 6th of October, 1878, the stage was suddenly surrounded by six masked highwaymen, who leveled their guns at him, dragged him from the stage, bound him, rifled his person, ransacked the stage, broke open his trunk, robbed him of $377.19, Government funds, belonging to the Commissary Department of the Army, and made their escape. The money has never been recovered, and the loss, as the court finds, was without fault or negligence on the part of the officer.
The claimant brings suit under the provisions of Bevised Statutes, section 1059, clause 3, and section 1062, for relief from responsibility on account of capture, while in the line of his duty, without fault or negligence on his part, of the Government funds in his charge as aforesaid and for which he is held responsible.
These facts present a meritorious case for the claimant, and we have only to consider whether there is anything in the law to prevent the court from entering a decree in his favor, as, prayed for.
The defendants make several objections:
1. Thai the claimant was not a “ paymaster, quartermaster^ *107 commissary of subsistence, or other disbursing officer,” entitled to the relief authorized by Eevised Statutes, sections 1059 and 1062, upon which this suit is founded. In support of' this allegation they refer to Eevised Statutes, section 1140, which specifies of what officers the Commissary Department of the Army shall consist, and they insist that these officers are the only “ commissaries ” to whom the relief provisions apply. That section is as follows
“Sec. 1140. The Subsistence Department of the Army shall1 consist of one Commissary-General of Subsistence, with the-rank of brigadier-general; two assistant commissaries-general of subsistence, with the rank of colonel of cavalry; two assistant commissaries-general of subsistence, with the rank of lieutenant-colonel of cavalry; eight commissaries of subsistence, with the rank of major of cavalry; and sixteen commissaries of subsistence, with the rank of captain of cavalry.”
In our opinion this is too limited a construction of the statutes and does not cover the whole case. Although an acting assistant commissary is not named in that section, the employment of an officer in such capacity and with that title is elsewhere amply provided for.
The Army Eegulations since 1866, if not earlier, have contained an article, which is now 47 of the edition of 1876, page 13, as follows:
“ 47. In the absence of a regimental quartermaster or commissary of subsistence, an officer may be detailed as acting assistant quartermaster or acting assistant commissary at a post or station. Copies of orders making such details will be forwarded at their date to the staff bureau concerned.”
In section 1261 of the Eevised Statutes among the officers-named as entitled to pay is the following provision:
“Acting assistant commissary, onq hundred dollars a year, in addition to pay of his rank.”
Two officers so designated have maintained actions in this court for pay under that statute (Morrison’s Case, 13 Ct. Cls. R., p. 1, affirmed on appeal, 96 U. S. R., 232; Grealish’s Case, 20 Ct. Cls. R., p. 486).
Two other officers, detailed as acting assistant commissaries, have brought suits under the provisions of the statute now under consideration for relief from responsibility on account of the loss of funds belonging to the Commissary Department of' *108 the Army intrusted to tbeir charge and have obtained decrees in their favor (Scott’s Case, 18 C. Cls. R., 1; Hoyle’s Case, 21 C. Cls. R., 300).
The statute includes among those who are to have its benefits not only paymasters, quartermasters, and commissaries of subsistence, but also “ other disbursing officers.” The claimant, having funds of the Commissary Department intrusted to him for expenditure, was practically a disbursing officer, as much ■so as though he had been a full commissary, whom the statutes •recognize as such.
The defendants insist that, as the claimant had never given bond as required by Revised Statutes, section 1191, as appears by the account stated against him by the accounting officer, he was not qualified to act at all.
It was held by the Supreme Court, in the case of United States v. Bradley, 10 Peters, 361, as to paymasters, that—
“ The giving of the bond was a mere ministerial act for the .security of the Government, and not a condition precedent to his authority to act as paymaster. Having received moneys as paymaster he must account for them as paymaster.”
This doctrine applies with equal force to commissaries acting as disburing officers as to paymasters.
The claimant received the funds in question as acting assistant commissary; the War Department so treated him ; the accounting officers of the Treasury stated an account against him as such, charging him with this and other subsistence money for which he is held responsible (Finding 1Y, Ho. 5), and, in our opinion, he is entitled to the benefit as a commissary or other disbursing officer of the statute for the relief of such officers from responsibility for funds lost by capture.
2. It is further insisted on the part of the defendants that, the claim is barred by the statute of limitations (Rev. Stat., -sec. 1069), because the petition was not filed until October 6, 1886, more than six years after the cause of action accrued.
The application of that statute to cases like this has been clearly defined by the Supreme Court in Clark’s Case (96 U. S. R., 37), where it was held that—
“ Until the accounting officers of the Treasury had refused to recognize the sum lost as a valid credit in the settlement of his accounts there was no occasion to apply to the Court of Claims; *109 and the statute, if applicable to this class at all, did not begin to run until then.
“ In the language of the statute, the officer is not held responsible for this amount until the accounting officers reject it as a credit, and it is only when he has been or is so held that he is authorized to sue in the Court of Claims to establish his defense.”
The whole subject is fully reviewed in Scott’s Case (18 C. Cls. R., 1), and needs no further exposition.
The loss occurred in 1878. Any action of the Commissary-G-eneral before the matter reached the Treasury Department would seem not to bé material under the rule laid down in Clark’s Case, and if it were, he made no demand for repayment of the money. He wrote to claimant December 9, 1879, calling attention to the fact that in his October account current he did not report himself accountable for the stolen funds, nor the steps, if any, taken to obtain relief from responsibility and adding that if such relief is not obtained within a reasonable time it would become necessary to recommend that the amount be stopped from his pay. Again, July 26, 1883, he wrote:
“ If an account current for July, 1883, and monthly thereafter, accounting for the funds referred to, is not received, a recommendation will be made that the amount, $377.19, be stopped from your pay.” (Finding III, Uos. 2, 4.)
The recommendation of stoppage of pay which the Commissary-G-eueral contemplated was to be made to the Treasury Department, where the law requires that—
“All claims and demands whatever by the United States or against them, and all accounts whatever in which the United States are concerned, either as debtors or as creditors, shall be-settled.” (Rev. Stat., § 236.)
Official action in the matter was not taken by either of the accounting officers of the Treasury until February 9,1S86, when the Third Auditor wrote to the claimant that his subsistence account for September, 1885—
“Having reached thisoffi.ee, it is found you have charged yourself with $377.19, funds stolen by stage robbers near Date Creek, A. T., October 6, 1878. * * * Unless evidence of repayment is filed in this office within thirty days from the date of.tills notice a like amount will be reported for stoppage against your pay.” (Finding IV, Ho. 3.)
*110 It was not till July 23, 1886, that an account was stated by 'the Third Auditor charging the claimant with the $377.19, and sent to the Second Comptroller for his decision thereon as required by law (Rev. Stat., § 266, clause 3). The Comptroller admitted and certified the account so stated September 8,1886. (Finding IV, Ho. 5.)
According to the decision of the Supreme Court, this latter date was the time when the statute of limitations began to run, if at all, and the petition was filed within the six years therein allowed.
A decree will be entered in the usual form for said sum of $377.19 to bo allowed the claimant by the accounting officers of the Treasury in the settlement of his accounts.